**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TINA GIANNICO EVANS,**

        **Plaintiff,**

**v.**                                          **Case No:  6:15-cv-1998-Orl-40DCI**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

---

**REPORT AND RECOMMENDATION**

Tina Giannico Evans (Claimant), appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying her application for a period of disability and disability insurance benefits. Doc. 1.  Claimant argues that the Administrative Law Judge (the ALJ) erred by: 1) failing to apply the correct legal standard to the opinion of Dr. Upton, a treating physician; and 2) failing to apply the correct legal standards to the opinion of Dr. Merilson, an examining psychologist. Doc. 13 at 1.  Claimant argues that the matter should be reversed and remanded for an award of benefits or further proceedings. *Id*. at 2.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

**I.**      **BACKGROUND**

On May 18, 2012, Claimant filed an application for disability insurance benefits, alleging an onset date of May 1, 2012.  R. 98, 181-182.  Her claims were denied initially and upon reconsideration.  R. 116-120, 127-131.  Claimant requested a hearing, which was held on October 29, 2014, before the ALJ.  R. 52-85, 133.  On January 8, 2015, the ALJ found Claimant not disabled and issued her an unfavorable decision.  R. 21-51.  Claimant requested review of the hearing

decision (R. 9) and, on September 29, 2015, the Appeals Council of the Social Security Administration denied the request for review. R. 1-7. On November 24, 2015, the Complaint was filed in this Court requesting that this Court reverse the decision of the Commissioner and remand the case for an award of benefits, or in the alternative for a *de novo* hearing. Doc. 1.

In making the determination that Claimant was not disabled, the ALJ followed the familiar, five-step, sequential process:

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience. *See Phillips*, 357 F.3d at 1237–39; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step one, the ALJ stated that Claimant had not engaged in substantial gainful activity (SGA) since the onset of the alleged disability. R. 26. However, the ALJ noted that she "assumed without deciding" that Claimant had not engaged in SGA, due to conflicts between Claimant's testimony and documents provided to the Social Security Administration. R. 26. At this early stage, the ALJ foreshadowed her eventual adverse credibility determination concerning Claimant's testimony. *See* R. 41 ("[C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . .").[1]

At step two, the ALJ found that Claimant had the following severe impairments: arthritis, gout, fibromyalgia, chronic sinusitis, nasal polyp, allergies, and hypertension. R. 26. But the ALJ

---

[1] Claimant has not challenged the ALJ's adverse credibility determination concerning Claimant's testimony.

also determined that:

> The claimant's medically determinable mental impairments of depressive disorder and anxiety related conditions, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

R. 26.

The ALJ then discussed in detail Claimant's history of treatment for depressive disorder and anxiety prior to and following the alleged onset of disability date. R. 26-31. Relevant here, this discussion involved consideration of the medical records authored by both Dr. Upton (Claimant's treating psychiatrist) and Dr. Merilson (an examining psychologist). R. 28-30. The records of Dr. Upton and Dr. Merilson related specifically to Claimant's mental health impairments, and not to Claimant's physical impairments that the ALJ determined to be severe. In particular, the ALJ considered Dr. Upton's statement, as summarized by the ALJ, that:

> Dr. Upton opined that the claimant's depression was due to chronic pain secondary to rheumatoid arthritis. Since she has been unable to work due to rheumatoid arthritis, she had symptoms of depressed mood, poor self-image and anhedonia, severe fatigue, low energy and poor sleep (Exhibit 30F). Dr. Upton noted that as her chronic pain and RA had increased, her depression had destabilized

R. 28.[2] The ALJ did not assign a specific weight to Dr. Upton's opinion.

Still at step two, the ALJ discussed Dr. Merilson's examination and opinions. R. 30-31. Dr. Merilson's evaluation of Claimant took place over the course of two days and involved both the use of assessment tools and an interview. R. 1237-41. Following the evaluation, Dr. Merilson authored a Neuropsychological Examination Report (the Report), dated September 17, 2014. R. 1237-41. On October 16, 2014, Dr. Merilson completed a Mental Residual Functional Capacity

---

[2] Dr. Upton actually stated that: "[Claimant] has a long history of Major Depressive Disorder which has in the past responded to treatment, allowing [her] to continue at her usual level of functioning. Over the past year, [she] has experienced an increase in symptoms of rheumatoid arthritis. Due to complications of rheumatoid arthritis, Ms. Evans has been unable to work." R. 1142.

Assessment (the Assessment). R. 1242-44. That Assessment contained three sections. R. 1242-44. The first section, titled "Summary Conclusions" consisted of a series pre-printed descriptions next to checked boxes, through which Dr. Merilson indicated that Claimant was "Markedly Limited" in the following areas:

   1. the ability to understand and remember detailed instructions;

   2. the ability to carry out detailed instructions;

   3. the ability to maintain attention and concentration for extended periods;

   4. the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

   5. the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and

   6. the ability to travel in unfamiliar places or use public transportation.

R. 1242-1243. The second section of the Assessment had room for Dr. Merilson to provide written remarks explaining her answers in the first section: Dr. Merilson left the second section blank. R. 1243. In the third section, titled, "Functional Capacity Assessment," Dr. Merilson made the handwritten note: "Please see neuropsychological assessment report dated 9/17/2014." In the Report, the only explicit reference to functional capacity is the following: "*Functional capacity does not appear to be significantly compromised by psychological factors*; however, daily function is affected by physical limitations and medical status." R. 1241 (emphasis added).

The ALJ gave "limited weight" to Dr. Merilson's opinions in the Assessment. R. 30. In doing so, the ALJ made the following findings:

> As for the opinion of Dr. Merilson, I give limited weight to the recent October 2014 Mental Residual Functional Capacity as it has undefined terms in Exhibit 35F without any rationale

4

in that at least some of the described limitations noted appear to be beyond the scope of the her onetime evaluation at Exhibit 34F, but she acknowledged that the claimant would not have any limitations with regard to social interaction. Although Dr. Merilson speculated about medication side effects causing cognitive limitations, there is no follow up from the evaluation to support such statement. Moreover, Dr. Merilson noted that the claimant is independent in her ADLs and is able to care for her birds and frequently engages in computer activities. Moreover, the claimant testified that she drives 3 times per week.

R. 30.

Continuing at step two, the ALJ considered the four functional areas set forth in the regulations for the consideration of mental disorders. R. 30-31; *see* [regulations]. The ALJ found that, due to Claimant's depression and anxiety disorders, Claimant: (1) suffered a mild limitation in her activities of daily living; (2) suffered no limitation in relation to her social functioning; (3) suffered a mild limitation in regards to her concentration, persistence and pace; and (4) suffered no episodes of decompensation that have been of extended duration. R. 30-31. Thus, the ALJ found that Claimant's medically determinable mental impairments were not severe. R. 31.

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. R. 31. Here, the ALJ gave Dr. Merilson's opinion "little weight":

> However, as discussed below, I give these opinions little weight as they are not supported by the overall credible evidence of record. As for the opinion of Dr. Merilson, I give limited weight to the recent October 2014 Mental Residual Functional Capacity as it has undefined terms in Exhibit 35F without any rationale in that at least some of the described limitations noted appear to be beyond the scope of the her onetime evaluation at Exhibit 34F, but she acknowledged that the claimant would not have any limitations with regard to social interaction. Although Dr. Merilson speculated about medication side effects causing cognitive limitations, there is no follow up from the evaluation to support such statement. Moreover, Dr. Merilson noted that the claimant is independent in her ADLs and is able to care for her birds and frequently engages in computer activities. Moreover, the claimant testified that she drives 3 times per week.

R. 31-32.

At step four, the ALJ, "after a careful consideration of the entire record," determined that

5

Claimant had the residual functional capacity (RFC) to engage in light work, with specific limitations. R. 32. At step four, the ALJ spent several pages discussing Claimant's medical records in detail: the ALJ discussed medical records related to Claimant's severe physical ailments and records concerning Claimant's mental health. R. 33-41.

At step five, the ALJ determined that Claimant possessed the RFC to perform past relevant work as a receptionist. R. 43.

## II. ANALYSIS

Here, Claimant argues that the ALJ erred by failing to apply the correct legal standard to the opinions of two medical providers who either treated or examined Claimant for her mental health impairments: (1) Dr. Upton, a treating physician; and (2) Dr. Merilson, an examining psychologist. Doc. 13 at 1. However, Claimant's assertion of error is vague and does not identify specifically the step or steps of the sequential evaluation process at which the alleged failure constitutes error. In response, as to Dr. Upton, the Commissioner asserts that the opinion at issue was not an opinion at all and, even if it was, it "was an opinion on an issue reserved to the commissioner." Doc. 16 at 4-5. As to Dr. Merilson, the Commissioner asserts that the ALJ properly considered Dr. Merilson's opinion. Doc. 16 at 11-19.

### A. The Standard of Review

The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards." *Escalante v. Comm'r of Soc. Sec.*, Case No. 6:15-cv-796-ORL-JSS, 2016 WL 3947298, at *5 (M.D. Fla. July 22, 2016) (citing 20 C.F.R. § 416.920). When a claimant challenges an ALJ's determination in regards to those steps, the Commissioner's (indeed, the ALJ's) findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**B. Step Two**

At step two, the ALJ is required to consider the severity of a claimant's medically determinable impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of those impairments, "the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills." *See Escalante*, 2016 WL 3947298, at *6-7 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(c)). A claimant bears the burden of proof in establishing that that the claimant suffers from a severe impairment or combination of impairments. *See Gibbs v. Barnhart*, 156 F. App'x 243, 246 (11th Cir. 2005).[3] An impairment is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) ("An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."). As defined in the regulations, "basic work activities" include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

If at step two the ALJ finds that a claimant has even one severe impairment, then the ALJ must proceed to the next sequential steps. And if the ALJ makes a finding of a severe disability and appropriately proceeds to the next sequential steps, then any alleged error related to the ALJ's

---

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

failure to find that other, additional medically determinable impairments are severe is harmless error. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902–03 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (step two is satisfied upon "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe").

But the ALJ is "required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Tuggerson-Brown*, 572 F. App'x at 951 (finding the ALJ's discussion of the combined effects of claimant's impairments sufficient because the ALJ discussed the non-severe impairments in the ALJ's assessment of claimant's RFC); *see Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (quoting the ALJ and finding that it was "clear" that the ALJ considered claimant's impairments in combination because the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity'") (emphasis in original). So if the ALJ fails to consider the non-severe impairments at

steps three, four, and five, then reversal and remand may be warranted. *See Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) ("In assessing whether a claimant is disabled at steps three through five, the ALJ must base her decision on the claimant's medical condition as a whole, which includes both severe and non-severe impairments.").

Here, at step two, the ALJ found that Claimant suffered from severe impairments related to arthritis, gout, fibromyalgia, chronic sinusitis, nasal polyp, allergies, and hypertension. R. 26. The ALJ then proceeded with the latter steps of the sequential evaluation process. Because the ALJ found that Claimant suffered from severe impairments and then proceeded beyond step two, any error by the ALJ in failing to find that Claimant suffered from additional severe impairments related to depression and anxiety is a harmless error. *See Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013). And, regardless, in making her determinations at step two, the ALJ extensively discussed and considered the medical records authored by Dr. Upton and Dr. Merilson related to Claimant's medically determinable conditions related to depression and anxiety. R. 26-31.

### C. Steps Three through Five

At step three of the sequential process, the ALJ properly considered all of Claimant's medically determinable impairments and found that Claimant did not have an "impairment or combination of impairments" that met or equaled the severity of a listed impairment. R. 31. Thus, the ALJ considered the combined effect of Claimant's impairments. *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Still at step three, the ALJ explicitly weighed Dr. Merilson's opinion, and gave that opinion "little weight" because it was "not supported by the overall credible evidence of record." R. 31-

32. The ALJ went on to identify specific reasons for her determination as to Dr. Merilson's opinion. *See* R. 32. The ALJ supported her decision by noting the limited nature of Dr. Merilson's examination, the apparent conflict between the conclusions in the Assessment and the narrative in the Report, the lack of objective support for certain determinations by Dr. Merilson, and the descriptions of the activities of daily living Claimant was able to complete as identified in Dr. Merilson's report and as testified to by Claimant. R. 32.

At step four, the ALJ, "[a]fter a careful consideration of the entire record" determined that Claimant had the RFC to perform light work, with certain limitations directly related to Claimant's physical impairments. R. 32. The ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" and "considered opinion evidence in accordance with" the applicable regulations. R. 32. The ALJ then conducted a thorough discussions of Claimant's impairments, symptoms and medical records, a third party witness statement, and Claimant's testimony, including evidence of symptoms related to Claimant's depression and anxiety. R. 32-42. Although the ALJ did not, for a third time, specifically discuss Dr. Merilson's opinion and did not again discuss Dr. Upton's records in detail at step four, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not 'a broad rejection' that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole." *Escalante*, 2016 WL 3947298, at *8 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

At step five, the ALJ compared Claimant's "residual functional capacity with the physical and mental demands" of Claimant's past relevant work as a receptionist and determined that

Claimant's residual functional capacity would allow Claimant to work as a receptionist. R. 43. The ALJ determined that Claimant had not been under a disability. R.43.

During the last three steps in the sequential process, the ALJ sufficiently considered whether the combination of all of Claimant's medically determinable impairments – including those deemed non-severe – rendered Claimant disabled. Further, because the ALJ found that Claimant had severe impairments at step two of her analysis, the ALJ's determination that Claimant's depression and anxiety were non-severe, even if erroneous, was harmless.

### D. The Medical Providers' Statements

Claimant's assignments of error in this matter specifically relate to alleged legal deficiencies in how the ALJ treated the records of two of Claimant's medical providers who made statements specifically related to Claimant's depression and anxiety. The undersigned is of the opinion that there was no error in this regard based upon the foregoing discussion of the sequential steps, and that both of Claimant's assignments of error should be denied on the bases set forth in the foregoing discussion. *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [treating physicians'] medical opinions, the error is harmless" if it does not "affect the administrative law judge's ultimate determination."); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975-76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th

Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

However, the undersigned will also discuss the medical providers' statements separately from the analysis of the sequential steps, because that is the manner in which Claimant framed her arguments.

The weighing of treating, examining, and non-examining physician's opinions is an integral part of steps two, three, four, and five of the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. at 1178-79 (citing 20 C.F.R. § 404.1527(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id*. at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown

to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

A medical opinion is a statement from an acceptable medical source that "reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite [his or her] impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added); *Winschel*, 631 F.3d at 1178-79. On the other hand, a medical provider's statement in a medical record "regarding 'issues reserved to the Commissioner' are not medical opinions, which are entitled to controlling weight under 20 C.F.R. § 404.1527(a)(2) and (c), 'but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.'" *Escalante*, 2016 WL 3947298, at *10 (quoting 20 C.F.R. § 404.1527(d)(1)). Thus, a medical provider's statement that a claimant is simply disabled or unable to work is not afforded special deference by the ALJ. *See Miles v. Comm'r Soc. Sec.*, 469 F. App'x 743, 745 (11th Cir. 2012) ("[A] medical source's statement that a claimant is 'unable to work' or 'disabled' does not bind the ALJ, who alone makes the ultimate determination as to disability under the regulations."); *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) ("A doctor's opinion on dispositive issues reserved to the Commissioner, such as whether the claimant is disabled or unable to work, is excluded from the definition of a medical opinion and is not given special weight, even if it is

offered by a treating source, but the ALJ should still consider the opinion.").

### Dr. Upton

As to Dr. Upton, the undersigned agrees with the Commissioner that the statement at issue is not a medical opinion as defined by the regulations. At issue is Dr. Upton's statement that "[s]ince [Claimant] has been unable to work due to rheumatoid arthritis," Claimant was suffering symptoms of depression. R. 28. While Claimant alleges that Dr. Upton opined that Claimant was "unable to work" and this "opinion" was not given weight, that allegation is simply not supported by the plain language of Dr. Upton's statement. At best, Dr. Upton's statement that Claimant had been "unable to work" is a recitation of a circumstance conveyed to Dr. Upton by Claimant, and is given by Dr. Upton as a cause of depression, not as a result of depression. In arguing the opposite, Claimant stands Dr. Upton's words on their head. Further, Dr. Upton's statement contains no opinions about what Claimant can still do despite her impairments, and identifies no specific physical or mental restrictions caused by her impairments. Therefore, the Dr. Upton's statements are not medical opinions, and thus the ALJ did not err by failing to weigh those statements.

Further, even assuming that Dr. Upton's statements are medical opinions, the ALJ's failure to weigh the statements is harmless error. First, to the extent that the statements generally evince an opinion that Claimant is unable to work due to her impairments, that opinion addresses the ultimate issue before the Commissioner – whether Claimant is or is not disabled – and, as such, "is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]" *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (per curiam); *see* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Second, Dr. Upton's statements do not contain any specific functional limitations that are more restrictive than the ALJ's RFC determination. *See, e.g.*, *Wright*, 153 F. App'x at 684

15

(failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell*, 261 F. App'x at 190 (similar). Thus, even if the statements are medical opinions, the ALJ's failure to weigh the Statements constitutes harmless error, because the outcome of the case would not change. *See Torres v. Astrue*, 2012 WL 621707, at *2 (M.D. Ga. Feb. 2, 2012) ("harmless error doctrine essentially dictates that if remand for the correction of an error would not change the outcome . . . such error is deemed harmless."). Accordingly, it is **RECOMMENDED** that the Court reject Claimant's first assignment of error.

### Dr. Merilson

As to Dr. Merilson, the undersigned agrees with the Commissioner that the ALJ appropriately considered Dr. Merilson's opinion. Again, at step two of the sequential process, the ALJ discussed Dr. Merilson's opinion and assigned that opinion a specific weight. In doing so, the ALJ gave specific reasons for her decision to assign Dr. Merilson's opinion in the Assessment "little weight." R. 28-29. At step three, the ALJ again explicitly weighed Dr. Merilson's opinion, and explained her reasons for assigning "little weight" to that opinion. R. 31-32. Specifically, the ALJ stated, and then provided record evidence supporting her statement, that Dr. Merilson's opinion was "not supported by the overall credible evidence of record." R. 31-32.

While "the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion" and the ALJ articulates his or her reasoning for rejecting the opinion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (internal quotations omitted); *see Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians); *Merritt v. Comm'r of Soc. Sec.*, Case No. 6:14-

cv-914-ORL-GJK, 2015 WL 5735192, at *2 (M.D. Fla. Sept. 29, 2015) ("The opinion of an examining physician, which is not entitled to any particular deference, is generally entitled to more weight than the opinion of a non-examining physician.").

Here, the ALJ considered Dr. Merilson's opinion, and then explained why the record evidence supported a contrary conclusion. In doing so, the ALJ sufficiently performed her duty, and the Court will not re-weigh the evidence to determine if the ALJ made a substantively incorrect decision. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Further, although Claimant takes issue with the ALJ's conclusions concerning Dr. Merilson's opinion, the ALJ's determination is supported by record evidence. For example, the ALJ's determination that the Assessment is beyond the scope of the Report (R. 30) is supported by the fact that the Assessment not only goes beyond the conclusions articulated in the Report upon which it explicitly relies (R. 1244), but actually contradicts the Report. *See* R. 1237-44. In the Report, which forms the basis for the conclusions in the Assessment (R. 1244), Dr. Merilson states that "[f]unctional capacity does not appear to be significantly compromised by psychological factors . . ." (R. 1241), but in the Assessment Dr. Merilson checks six boxes that identify "marked limitations" in functional capacity, allegedly related to psychological factors. Similar contradictions appear when comparing the conclusions in the Assessment to both Dr. Merilson's findings in the Report and Claimant's own testimony concerning her activities of daily living, both of which indicate that Claimant can do things like interact with friends, use a computer, care for her birds, and drive herself places. *See* R. 57-65; 1237-41.

Finally, the undersigned is of the opinion that the selected quotation to portions of Dr.

17

Merilson's Report does not constitute impermissible cherry-picking of certain parts of Dr. Merilson's opinion and the failure to consider other parts, as alleged by Claimant. There is no requirement that the ALJ specifically recite every piece of evidence at issue, and the Court finds that by citing specific record evidence in her rejection of Dr. Merilson's opinion, the ALJ sufficiently supported her conclusions, and did not simply engage in a broad rejection of Dr. Merilson's opinion. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.

### III.   CONCLUSION.

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **AFFIRM** the final decision of the Commissioner; and
2. Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant, and close the case.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 19, 2016.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy